# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS WHITNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 4475 |
| ) | |
| FAUZIA KHAN, THOMAS DART, ) | |
| and COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Demetrius Whitney is a former inmate at the Cook County Jail who repeatedly requested treatment for dental problems at the jail's Residential Treatment Unit (RTU) dental clinic while in custody. He sued the dentist at the RTU, Dr. Fauzia Khan, as well as the county and Sheriff Thomas Dart, alleging that the RTU's scheduling and staffing policies caused unreasonable delays in dental care in violation of the Eighth Amendment. He has moved to certify a class of similarly situated plaintiffs under Federal Rule of Civil Procedure 23(b)(3). For the reasons stated below, the Court grants the motion after adopting a modified class definition proposed by Whitney in supplemental briefing.

## Background

The RTU dental clinic opened in January 2017, and it is staffed by one dentist—Dr. Khan—and one dental assistant. It is one of six dental clinics at the Cook County Jail where Whitney was in custody from 2017 to 2018. He contends that he submitted

at least eight health service request forms complaining of severe toothaches and other dental problems but did not receive prompt treatment. He alleges that these delays caused him to suffer unnecessary and gratuitous pain in violation of the Eighth and Fourteenth Amendments.

Whitney moved to certify the following class:

> All the inmates at the Cook County Department of Corrections on or after January 1, 2017, assigned to be treated by the Residential Treatment Unit Dental Clinic, who have made a written request for dental care because of acute pain and who suffered prolonged dental pain because of lack of treatment.

Mot. for Class Certification, dkt. no. 14, at 1. Following a status hearing during which the Court sought additional clarification about the meaning of the terms "acute" and "prolonged," the parties filed supplemental briefs addressing the whether the putative class members could be identified using data in their medical records. In his supplemental brief, Whitney proposed an alternative class definition that would encompass individuals whose health service request forms the RTU processed as urgent and who were not evaluated by a dentist for at least fourteen days.

## Discussion

A plaintiff seeking class certification must first show that the putative class meets the four requirements of Federal Rule of Civil Procedure 23(a): "numerosity, typicality, commonality, and adequacy of representation." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). Because Whitney seeks certification under Rule 23(b)(3), he must also show that questions of law or fact common to the class members predominate over individualized issues and that a class action is the superior method of adjudicating the case. Fed. R. Civ. P. 23(b)(3); *Beaton*, 907 F.3d at 1025.

The defendants do not dispute that the proposed class is sufficiently numerous or that Whitney is an adequate class representative.[1] They contend, however, that the proposed class definition fails to meet the requirements of ascertainability, typicality, commonality, predominance, and superiority.

**A.    Ascertainability**

At the threshold, the members of a proposed class must be ascertainable, which means that the class must be "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659 (7th Cir. 2015). A clear definition is one that "identif[ies] a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. "[C]lasses that are defined by subjective criteria, such as by a person's state of mind, fail the objectivity requirement." *Id.* The defendants argue that the proposed class definition is both vague and subjective because it seeks to identify class members who experienced "acute" and "prolonged" pain—terms with no determinate meaning that defendants contend would require evaluating each potential class member's mental state.

In his supplemental brief, Whitney offers objective glosses on those terms: a putative class member's pain is "acute" if the RTU processed his health service request form as urgent, and his pain is "prolonged" if he went more than fourteen days without seeing a doctor after requesting medical attention. *See* Pl.'s Suppl. Mot. for Class Certification, dkt. no. 53, at 2-3. Whitney also suggests amending the proposed class

---

[1] The defendants also do not dispute that Whitney's attorneys are suitable class counsel. Applying the standards of Rule 23(g)(1)(A), the Court concludes that Patrick William Morrissey and Thomas Gerard Morrissey are qualified to serve as class counsel.

3

definition to directly incorporate these requirements in place of the references to the putative class members' pain.

This proposed alternative class definition satisfies Rule 23's ascertainability requirement. Because it contains no references to pain, the alternative class definition eliminates any arguably subjective criteria and replaces them with descriptions of conduct. *See Mullins*, 795 F.3d at 660 ("Plaintiffs can generally avoid the subjectivity problem by defining the class in terms of conduct (an objective fact) rather than a state of mind."). And these descriptions of conduct identify particular subsets of individuals based on data in medical records and thereby avoid problems of vagueness.

Finally, the defendants argue that practical barriers to identifying class members undermine ascertainability. Although Whitney's alternative class definition appears to obviate these concerns, in any event this argument is misplaced. At this threshold stage, Whitney need not show that the class members can be readily identified; the difficulty or impracticability of determining who belongs to the class implicates Rule 23(b)(3)'s superiority requirement, not ascertainability. *See id.* at 672. The defendants' arguments concerning the need for individualized inquiries to identify the class members are therefore irrelevant to the question of ascertainability.

**B.  Typicality**

The defendants next argue that Whitney's claims are not typical of the class as a whole. Because the defendants' objections to typicality are redundant with their arguments concerning commonality and predominance, the Court concludes that these objections are better addressed with respect to those elements. *See Priddy v. Health*

*Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (noting that "commonality and typicality tend to merge" (internal quotation marks omitted)).

**C.     Commonality**

Rule 23(a)(2) requires a plaintiff seeking class certification to show that there are "questions of law or fact common to the class." The Supreme Court has clarified that commonality requires "not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For the purposes of this requirement, "[e]ven a single [common] question will do." *Id.* at 359 (alterations in original) (internal quotation marks omitted). At the class certification stage, courts must broach the merits of a case if necessary to determine whether the proposed class shares common questions of law or fact. *Id.* at 351.

A plaintiff alleging deliberate indifference in violation of the Eighth Amendment may attempt to prove his claim in one of two ways. First, he may establish "isolated instances of indifference" by showing that he "suffered from an objectively serious medical condition and that the defendant was deliberately indifferent to that condition." *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 544 (7th Cir. 2016). Alternatively, the plaintiff can show that "systemic deficiencies at the prison's health care facility rendered the medical treatment constitutionally inadequate for all inmates." *Id.* A systemic deficiency claim requires evidence that "there are such systemic and gross deficiencies in staffing, facilities, equipment, or procedures that the inmate population is effectively denied access to adequate medical care." *Id.*

Whitney argues that there is a common question regarding whether the defendants engaged in a widespread practice of failing to provide detainees with timely dental care. Specifically, he points to two policies that he alleges cause systemic delays in treating acute pain: (1) understaffing of dentists and dental assistants at the RTU and (2) delegating responsibility for scheduling to the dental assistants, who are not authorized to diagnose the inmates.

Ample evidence supports these contentions. First, Whitney cites statements by Dr. Khan complaining of personnel deficiencies. In an e-mail responding to a supervisor's concerns about her productivity, Dr. Khan wrote, "If there is a huge demand for care here in Div 8 with only 1 dr and 1 asst and scheduled allotted days for the divisions; then realistically, how can the standard of care be provided in a timely manner?? It's impossible." Pl.'s Reply Br. Ex. 4, dkt. no. 32, at 2. She testified during her deposition that she and her assistant "feel[] like we have an overload of patients that I'm being responsible for even though my director says otherwise." Pl.'s Ex. 10, dkt. no. 14, at 89:15-21. She repeated this sentiment during a second deposition by stating that she could not "see how [meeting the demand for dental care] is humanely possible, logically and practically" given her scheduling constraints and the number of inmates that require care. Pl.'s Reply Br. Ex. 3, dkt. no. 32 at 177:3-23. Dr. Khan's numerous complaints are "substantial evidence of systemic deficiencies" in the quality of dental care. *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016) (relying on comparable testimony by medical providers in a jail to reverse the district court's grant of summary judgment in a deliberate indifference case).

Plaintiffs also point to evidence that the defendants' scheduling practices, particularly delegating scheduling decisions to dental assistants, are a barrier to timely care. In an e-mail, Dr. Khan acknowledged that dental assistants control scheduling, explaining that she has "never ever interfered or given input with scheduling requests. I was told that the assistants had full autonomy of the scheduling and I went along with it." Pl.'s Reply Br. Ex. 2, dkt. no. 32, at 1. When asked during her deposition whether she was able to ensure that inmates would be promptly seen after submitting health service request forms, Dr. Khan responded, "I wasn't able to ensure that." Pl.'s Reply Br. Ex. 3., dkt. no. 32, at 153:3-154:2.

Whitney points out that alleged deficiencies in the scheduling of dental care at the Cook County Jail were the subject of the district court decision that the Seventh Circuit reviewed in *Phillips*. *See Smentek v. Sheriff of Cook Cty.*, No. 09 C 529, 2014 WL 7330792 (N.D. Ill. Dec. 22, 2014). The district court in *Smentek* decertified a class after Cook County dramatically changed its dental care policies, including by increasing dental staffing and allowing the dental clinics to schedule five emergency patients each afternoon to respond to urgent medical needs. *See id.* at *2, *8-9. Whitney points to testimony by Dr. Thomas Prozorovsky, another dentist at the Cook County Department of Corrections, that this scheduling change was never actually implemented. *See* Pl.'s Ex. 8, dkt. no. 14, at 62:7-11. This evidence that the RTU has failed to comply with its own policy, which it implemented to ensure prompt treatment of urgent dental problems, further supports Whitney's contention that his claim of deliberate indifference is better characterized as systemic rather than individual and is therefore amenable to class-wide resolution.

7

This evidence suffices to show that there is at least one question common to the class as a whole whose answer would drive the resolution of the litigation. As the Seventh Circuit noted in *Phillips*, the county's "decision to staff the Jail with only one dentist" is a "common policy that might constitute systemic deliberate indifference." *Phillips*, 828 F.3d at 558. Whitney's contentions regarding the RTU's scheduling policies similarly purport to identify a "policy that regularly and systematically impeded timely examinations." *Id.* at 557.

The defendants argue that the need for individualized inquiries into the reasonableness of the delay with respect to particular inmates undermines commonality. They rely on two decisions by courts in this district denying motions for class certification in cases where plaintiffs alleged unconstitutional delays in dental care. In the first, *Smith v. Sheriff of Cook County*, No. 07 C 3659, 2008 WL 4866071 (N.D. Ill. July 16, 2008), the court noted that even if it were to find that inadequate staffing had produced delays, it would also need to consider "individualized and divergent facts" about whether the class members had been harmed by the delay. *Id.* at *2. In the second, *Wrightsell v. Sheriff of Cook County*, No. 08 CV 5451, 2009 WL 482370 (N.D. Ill. Feb. 19, 2009), the court relied on the reasoning in *Smith* in holding that determining whether delays in dental care were reasonable required "a case-by-case analysis and factual determination as to the degree of seriousness of dental impairment of each detainee versus the time within which treatment was provided." *Id.* at *3.

The Court is not persuaded that these decisions compel the conclusion that there are no common questions in this case. First, they arguably contradict the principle that an illegal policy can serve as "the 'glue' necessary to litigate otherwise highly

8

individualized claims as a class." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 498 (7th Cir. 2012) (citing *Wal-Mart*, 564 U.S. at 352); *see also Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 436 (7th Cir. 2015) (holding that allegedly discriminatory policies constituted "the glue that binds the claims together" even though each class member's claim of discrimination required individualized analysis). In this case, the evidence that the defendants' scheduling and staffing policies produced widespread, systematic delays in dental treatment binds the class together for the purposes of commonality. If Whitney can show, for example, that these policies caused delays at the RTU such that it failed to "treat the patient[s] promptly, thus prolonging the patient[s'] pain, while knowing that the patient[s] may well be in serious pain that is treatable," *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015), he will establish an essential element of his Eighth Amendment claim for the entire class at once.

Second, *Smith* and *Wrightsell* are incompatible with Seventh Circuit's later reasoning in *Phillips*. The contention that delays in medical treatment inherently require an individualized inquiry that defeats commonality contradicts the Seventh Circuit's observation that "a class action probably could be brought where evidence suggested that a prison had such a consistent pattern of egregious delays in medical treatment that a trier of fact might infer a systemic unconstitutional practice." *Phillips*, 828 F.3d at 557. The expansive holdings of *Smith* and *Wrightsell* would have the untenable consequence of effectively foreclosing class actions in cases alleging unconstitutional delays in medical care. That would be inconsistent with *Phillips*, which expressly contemplates that some such cases are appropriately certified as class actions. *See id.*

("If plaintiffs can present classwide evidence that a prison is engaging in a policy or practice which rises to the level of a systemic indifference, then we can identify conduct common to members of the class which advances the litigation." (internal quotation marks omitted)).

**D.     Predominance**

Having satisfied Rule 23(a)'s requirements for class certification, Whitney must show that the proposed class meets the requirements of Rule 23(b)(3):  that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  The purpose of the predominance inquiry is "to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).  This requirement is satisfied if "common questions represent a significant aspect of a case and . . . can be resolved for all members of a class in a single adjudication."  *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016) (quoting *Messner*, 669 F.3d at 815).  Put another way, the plaintiff must show that "the proposed class's claims arise from a common nucleus of operative facts and issues."  *Beaton*, 907 F.3d at 1029.

The defendants contend that the proposed class cannot meet the predominance requirement because individual questions overwhelm common ones.  They point to eight different questions that they argue require individual resolution.  Although many of these questions would be relevant to the predominance inquiry if Whitney were alleging

10

an isolated case of deliberate indifference—including, for example, whether the defendants were subjectively aware of his medical condition—his evidence that the defendants' policies produced systemic delays in treatment make these issues amenable to class-wide resolution. *See Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989) ("[A] prison official's failure to remedy systemic deficiencies in medical services . . . constitute[s] deliberate indifference to an inmate's medical needs."). Other purportedly individual questions are altogether irrelevant to Whitney's claims, such as which dental assistant scheduled the appointment. And although damages would need to be calculated on an individualized basis, that is not an appropriate reason to deny class certification. *Messner*, 669 F.3d at 815.

The defendants also point out, however, that the proposed class encompasses individuals who suffered only minor dental pain that did not require immediate medical attention. As Whitney acknowledges, the RTU processed every complaint of dental pain as urgent. That means that the proposed class would include even individuals who requested medical attention complaining of the lowest degree of discomfort on the pain scale.

The defendants are correct that this variation among the class members creates an individualized question. A plaintiff alleging deliberate indifference under the Eighth Amendment must show that he suffered from an objectively serious medical condition. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Not all dental pain qualifies as objectively serious under this standard. Courts have generally found that dental pain is sufficiently serious only when it is accompanied by other harm, such as recession of the gums, tooth decay, or difficulty eating. *See Board v. Farnham*, 394 F.3d 469, 480 (7th

11

Cir. 2005) (collecting cases); *see also Dobbey*, 806 F.3d at 940 (distinguishing a tooth abscess from "a simple toothache"); *Hoeft v. Menos*, 347 F. App'x 225, 227 (7th Cir. 2009) ("[T]he symptoms Hoeft describes—six months of extensive pain from untreated cavities and tooth loss that prevented him from properly chewing his food—qualify as a serious medical condition."); *Kennard v. Cook Cty. Dep't of Corr.*, No. 08 C 6844, 2011 WL 289431, at *4 (N.D. Ill. Jan. 27, 2011) (noting that discomfort caused by wisdom teeth that was not accompanied by other medical harm would not be objectively serious); *Berry v. Peterman*, No. 08-CV-421, 2009 WL 3061977, at *6 (E.D. Wis. Sept. 23, 2009), *rev'd in part on other grounds*, 604 F.3d 435 (7th Cir. 2010) (finding an objectively serious medical condition because the plaintiff's dental pain was intense and caused headaches that interfered with sleeping and eating). Given the range of severity in the potential class members' dental problems, each putative class member would need to prove that he or she suffered from a sufficiently serious condition in order to establish an Eighth Amendment violation.[2]

---

[2] The defendants also contend that "individual determinations will still need to be made to determine whether a wait of two weeks was reasonable under the circumstances, and whether it resulted in injury or harm." Defs.' Supp. Resp., dkt. no. 59, at 3. As a practical matter, however, these questions substantially overlap with the issue of objective seriousness. Whether the delay was reasonable under particular circumstances is essentially the same question as whether the class member had an objectively serious medical need, because "an objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation marks omitted). Under this standard, the questions of objective seriousness and the reasonableness of a delay in treatment are closely related. *See Petties*, 836 F.3d at 730 ("[W]hether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment."). The question of harm is similarly redundant because failing to promptly treat a patient suffering from serious pain itself violates the Eighth Amendment. *See Dobbey*, 806 F.3d at 940. These individualized questions therefore do not constitute a distinct basis for denying class certification.

Despite the need to individually determine whether each class member suffered from an objectively serious medical condition, the Court concludes that common questions would predominate as required under Rule 23(b)(3).  Whitney has pointed to evidence that two specific policies—understaffing of the RTU dental clinic and delegating scheduling responsibility to dental assistants—have caused widespread delays in the provision of dental care that it alleges amount to deliberate indifference.  These policies are a "significant aspect of the case," *Kleen Prods.*, 831 F.3d at 925, and constitute a "common nucleus of operative facts and issues" shared by all the class members, *Beaton*, 907 F.3d at 1029.  Whitney's proposed class therefore satisfies the predominance requirement notwithstanding the need for individualized proof of objective seriousness.  The Court notes that it retains discretion to narrow or decertify the class under Rule 23(c)(1)(C) if it becomes evident in the course of the litigation that common questions do not predominate.

**E.    Superiority**

Finally, under Rule 23(b)(3) Whitney must show that a class action is a superior method of adjudicating the controversy.  The defendants contend that even under Whitney's proposed alternative class definition, the practical challenges in identifying class members would make a class action unduly difficult to administer.  But as Whitney points out, the alternative class definition identifies potential class members based on objective data in medical records.  The defendants do not argue that this data is inaccessible or incomplete, but only that the proposed class definition sweeps too broadly.  This argument therefore simply repeats their objections to commonality and predominance, which the Court has already discussed.

The Court concludes that a class action is superior to individual litigation in this case. All of the inmates who requested dental care at the RTU in the relevant time period were confronted with the same staffing and scheduling policies that Whitney alleges caused systemic delays in treatment. Although this case presents questions that require individualized resolution, as the Court previously noted, the common allegations concerning the RTU's staffing and scheduling policies can be resolved with respect to the class as a whole. The ability to resolve these issues in a single proceeding makes a class action the superior method of adjudication despite any challenges that may accompany the resolution of individualized questions. *See Mullins*, 795 F.3d at 663 (referring to the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns").

## Conclusion

For the foregoing reasons, the Court grants plaintiff's motion for class certification [dkt. no. 14]. The Court certifies the following class under Rule 23(b)(3): all persons assigned to be treated by the Residential Treatment Unit dental clinic from January 1, 2017 to the date of entry of judgment, who submitted a written "Health Service Request Form" processed as "urgent" by the RTU dental assistant and did not receive an evaluation by a dentist for at least 14 days after submitting the request. The Court also appoints Patrick William Morrissey and Thomas Gerard Morrissey as class counsel.

                                                                    _____
                                                                         MATTHEW F. KENNELLY
                                                                         United States District Judge

Date: March 11, 2019