**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DEMETRIUS WHITNEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 4475 |
| ) | |
| FAUZIA KHAN, THOMAS DART, ) | |
| and COOK COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Court previously certified, under Federal Rule of Civil Procedure 23(b)(3), a plaintiff class consisting of:

> all persons assigned to be treated by the [Cook County Jail] Residential Treatment Unit dental clinic from January 1, 2017 to the date of entry of judgment, who submitted a written "Health Service Request Form" processed as "urgent" by the RTU dental assistant and who did not receive an evaluation by a dentist for at least 14 days after submitting the request.

*Whitney v. Khan*, 330 F.R.D. 172, 180 (N.D. Ill. 2019).

Plaintiffs have now moved the Court to certify a subclass and to appoint new representatives for the subclass, each of whom also seeks to intervene as a named plaintiff. The proposed subclass, modified from plaintiffs' original request for a subclass, consists of those members of the certified class who "were subsequently referred by the RTU dentist to the Stroger [Hospital] Oral Surgery Clinic." *See* Pl.'s Suppl. Submission to Mot. to Divide Class (dkt. no. 147) at 2. Plaintiff propose as representatives of the

subclass two current members of the certified class: Robert Burgess and Brian Henry. Defendants oppose plaintiffs' motion.

The background for plaintiffs' motion is as follows. In discovery conducted after certification of the class, plaintiffs have learned that a significant number of patents assigned to the Residential Treatment Unit (RTU) dental clinic were referred by that clinic to the Stroger Hospital oral surgery clinic for tooth extractions. This became even more common after April 2019, when the RTU's dentist, Dr. Fauzia Khan, lost the privilege to extract teeth. Plaintiffs contend that discovery has shown that patients referred to the Stroger oral surgery clinic faced significant delays before their extractions—as much as three months—simply by virtue of the fact that they were being referred from a dental clinic at the jail. Plaintiffs contend that this amounted to a policy or established custom of inappropriate delay violative of the detainee-patients' constitutional rights, which caused them unnecessarily prolonged pain and suffering. They have requested certification of a subclass on the ground that these particular class members were subjected to an additional delay in treatment beyond the delays experienced by class members generally, thus warranting separate consideration.

## Discussion

Federal Rule of Civil Procedure 23(b)(5) permits a court to divide a class into subclasses. Certification of a subclass is permissible "so long as [the] subclass is homogeneous, in the sense that every member of the subclass wants the same relief, and [the] subclass otherwise satisfies the requirements for certifying a class, so that each could be the plaintiff class in a separate class action." *Johnson v. Meriter Health*

*Servs. Employee Retirement Plan*, 702 F.3d 364, 368 (7th Cir. 2012).[1] What this means, in substance, is that plaintiffs must meet the requirements of Rule 23(a)—numerosity, typicality, commonality, and adequacy of representation—and (b)(3): predominance of common questions over individualized issues, and superiority of a class action over other members of adjudicating the case. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). The class must also meet the non-Rule-based requirement of ascertainability, specifically, it must be "defined clearly and based on objective criteria." *Mullins v. Direct Dig., LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

In deciding a motion for class certification, a court may not simply assume the truth of the plaintiff's contentions. If there are material factual disputes, the court must resolve them before deciding whether to certify the class, even if these issues overlap with the ultimate determination of the merits. *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017). That said, on class certification, "the merits are not on the table." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018) (citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d at 811 (class certification should not be turned into a "dress rehearsal for the trial on the merits")).

**1.     Ascertainability**

Defendants do not dispute the ascertainability of the proposed subclass. It is based on the same objective criteria as the class originally certified—submission of a written Health Service Request Form that the RTU dental assistant processed as

---

[1] Plaintiffs contend that a so-called "case management" subclass is not required to independently satisfy each requirement for certification of a class under Rule 23(a) and (b)(3), *see* Pl.'s Suppl. Submission to Mot. to Divide Class (dkt. no. 147) at 2, but the Court need not determine that issue, because the proposed subclass *does* meet the requirements for certification under Rule 23.

3

"urgent," and the absence of an evaluation of the detainee by a dentist for at least 14 days after submission of the request—plus one more: a subsequent reference of the detainee to the Stroger oral surgery clinic. These criteria are both objective and clear.

## 2. Numerosity and adequacy of representation

Numerosity and adequacy of representation likewise are not in dispute. The proposed subclass consists of 198 class members who were referred to the Stroger oral surgery clinic. And defendants do not contest the adequacy of proposed class representatives Burgess and Henry or class counsel, Thomas Morrissey and Patrick Morrissey.

## 3. Commonality

Rule 23(a)(2) requires a plaintiff seeking class certification to show that there are "questions of law or fact common to the class." This requires "not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To put it another way, "[t]he claims must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No 1 v. Bd. of Ed. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). But "[e]ven a single [common] question will do." *Wal-Mart*, 564 U.S. at 359.

Defendants argue that commonality is lacking among the members of the proposed subclass. Specifically, they contend there is no evidence supporting the proposition that all Stroger oral surgery patients are scheduled at least ten weeks out, without the exercise of independent judgment. Defendants say that plaintiffs are basing this proposition on deposition testimony to this effect by Juana Macias—who was

4

responsible for scheduling appointments at the Stroger clinic—that, defendants contend, she gave more or less off the cuff, without consulting documentation. Defendants also say that for any number of patients, including at least one discussed at Macias's deposition and one of the proposed class representatives (Robert Burgess), oral surgery appointments were scheduled out less than ten weeks, and sometimes far less. Finally, defendants argue that there are situations in which the referring dentist may reach out to expedite an oral surgery appointment or may make referrals outside the computerized referral order system, or an earlier appointment may be made in an emergency situation. They contend that this factor defeats commonality as well.

Defendants, however—represented by the same counsel—admitted the following facts during summary judgment proceedings in *Townsend v. Dart*, Case No. 18 C 8274:

- For a patient to be scheduled at the Stroger oral surgery clinic, the jail dentist enters an electronic referral order for a certain tooth to be extracted. Pl.'s Supp. to Subclass Mot. at 2 (citing No. 18 C 8274, Defs.' Resp. to Pl.'s LR 56.1(b)(3)(C) Stat. ¶ 1(a) (hereafter Defs.' *Townsend* 56.1 Stat.)).

- After the jail dentist enters the referral, Dr. Jorelle Alexander explained the responsibility to schedule an oral surgery appointment transfers to somebody within the oral surgery clinic. *Id.* (citing Defs.' *Townsend* 56.1 Stat. ¶ 1(b)).

- All electronic referral orders for the oral surgery clinic are received in a queue monitored by Juana Macias, a clerk assigned to Stroger Hospital's Referral Support Center. *Id.* (citing Defs.' *Townsend* 56.1 Stat. ¶ 2(a)).

- Macias schedules patients based on the "next available date" offered by the computer. *Id.* (citing Defs.' *Townsend* 56.1 Stat. ¶ 2(c)).

5

- All appointments, according to Macias, are scheduled 10 to 12 weeks away and no independent judgment is exercised to schedule an appointment. (*Id.* (citing Defs.' 56.1 Stat. *Townsend* ¶ 2(d)).

Defendants admitted these facts just one week before they filed their brief in the present case arguing lack of commonality. They do not suggest that these admissions are not binding on them with respect to the present motion. These admissions, together with the evidence cited by plaintiffs, establish by a preponderance of the evidence, see Messner, 669 F.3d at 811, that the members of the proposed subclass have been subjected to a common policy of unreasonable delay in scheduling oral surgery procedures following referral by a dentist. And this common question—the existence of such a policy and its legal implications—is highly likely to drive the resolution of the claims of the subclass.

**4.   Typicality**

A class representative's claims are typical of the proposed class if they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of the other class members and [are] based on the same legal theory." *Lacy v. Cook County*, 897 F.3d 847, 866 (7th Cir. 2018); *see also Beaton*, 907 F.3d at 1026. Typicality does not require perfect identity of claims; claims "may feature some factual variations as long as they have the same essential characteristics." *Beaton*, 907 F.3d at 1026.

Plaintiffs have submitted affidavits from the proposed subclass representatives that reflect the typicality of their claims. Burgess states that Dr. Fauzia Khan, the dentist at the RTU dental clinic, referred him for oral surgery to remove two teeth on August 21, 2017. Burgess says that nothing happened following this referral, and he submitted a

6

health service request form on October 6, 2017 reporting his pain and need for an extraction. According to Burgess, he was not treated at the Stroger oral surgery clinic until May 2018, about nine months after the initial referral. *See* Pls.' Mot., Ex. 8 ¶¶ 5-7. Henry, the other proposed subclass representative, states that Dr. Khan referred him to the Stroger oral surgery clinic on October 17, 2018 but that his teeth were not extracted there until January 2019. *See id.*, Ex. 9 ¶¶ 4-6. These affidavits are sufficient to show that the proposed representatives' claims share the same essential characteristics of those of the proposed subclass.

With regard to Burgess, defendants cite a scheduling history printout that they contend shows that he got his Stroger appointment in May 2018 about one week after it was requested. *See* Defs.' Resp. to Pls.' Suppl. Mem., Ex. 1 at 11. But defendants have offered no evidence that explains this printout or puts it in context. In any event, it does not undercut or even contradict Burgess's sworn statement that Dr. Khan originally referred him for oral surgery many months earlier.

In sum, plaintiffs have established that the proposed subclass representatives' claims are typical of those of the subclass.

**5. Predominance**

The defendants argue that the proposed class cannot satisfy Rule 23(b)(3)'s predominance requirement. "There is no mathematical or mechanical test for evaluating predominance," but it is more a demanding requirement than commonality or typicality. *Messner*, 669 F.3d at 814. "The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues." *Beaton*, 907 F.3d at 1029. In making this assessment, the Court must do

7

"more than a tally of common questions; [it] must consider their relative importance." *Id.* The mere fact that not every issue is "amenable to common resolution" does not defeat predominance, even if "individual inquiries may be required after the class phase" on discrete issues like damages. *Id.*; *see also Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 469 (2013) ("Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each element of her claim is susceptible to classwide proof." (internal quotation marks and alterations omitted)). "Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chi. Teachers Union*, 797 F.3d at 444.

The claims of the subclass unquestionably involve significant common questions: whether there is a policy or common practice of extended delay in scheduling oral surgery for detainees referred by a dentist; how the policy or practice came into being; its justification; and whether it is unreasonable and violative of detainees' constitutional rights. These are the key questions that will drive the determination of liability with regard to the subclass. On the other side of the ledger, any variations among the plaintiffs' claims are likely to involve the specific length of the interval between the RTU dentist's referral for oral surgery and the conduct of that surgery at the Stroger Clinic. This is a material issue, but it is highly unlikely to predominate over the significant common issues. The same is true of any other claimed individual issues. The amount of damages is likely to differ among the members of the subclass, but that is not a sufficient reason to deny class certification. *Messner*, 669 F.3d at 815.

**6.     Superiority**

Finally, Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The rule identifies four factors that may be relevant to the superiority analysis:

> (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants argue that the subclass members should have to litigate their claims in a separate suit already pending before another judge of this court, *Carr v. Sheriff of Cook County*, No. 17 C 7135, a putative class action. That makes no sense. Not only has no class been certified in the *Carr* case; there is not even a pending motion for class certification. Thus defendants propose to relegate plaintiffs to a case in which they currently lack the ability to pursue their claims. And just as significantly, plaintiffs are *already* member of a certified class in the present case that includes their claims for inappropriate denial or delay of dental care. There is no reason to relegate them to some other case, at least not on the speculative proposition that they might someday be able to litigate their claims in that case.

More fundamentally, because the members of the subclass are already members of a certified class in this case, their claims regarding delay and denial of dental care will be addressed in the present suit. Specifically, all of the class members contend their initial request to see a dentist because of a serious need were delayed or denied,

9

causing them to suffer unnecessary pain. The members of the subclass contend their surgery *for the same underlying dental problem* was unreasonably delayed following a referral by the examining RTU dentist. The members of the subclass each will have suffered a single course of physical pain, arising from a single serious dental problem. As a result, the entire course of pain and suffering damages—both before the dentist's referral and after—likely will be recoverable, under standard tort damages principles, on their claims regarding the initial delay. To put it another way, there is likely no good way to parse a particular class member's damages for pain and suffering arising from the initial delay from his damages for pain and suffering arising from the delayed surgery for the same underlying dental problem. In other words, the fact that the subclass members' pain and suffering was extended by a second allegedly unreasonable policy of the Sheriff or County will not cut off their damages from the initial allegedly unreasonable policy. "One's own conduct cannot be an intervening cause sufficient to defeat a finding of causation." *Whitlock v. Brueggeman*, 682 F.3d 567, 584 (7th Cir. 2012). And even if this turns out not to be the case, it makes little sense to require the 198 members of the proposed subclass to initiate or participate in two separate lawsuits to recover for the entirety of the pain and suffering they claim as a result of the delays in providing them with needed dental treatment. Requiring them to do so would inevitably lead to confusion and inconsistent results.

To summarize, with regard to the superiority factors listed in Rule 23(b)(3):

- The subclass members' dental care claims are already being litigated in the present class action, and they do not have a significant interest in prosecuting individually their claims regarding delays in appointments at the Stroger oral

surgery clinic.

- As discussed, there is no other litigation that provides a current or realistic means for the subclass members to pursue their claims.

- The subclass members are already litigating their dental-delay claims in this forum; it makes little sense to require them to split their claims in two.

- Creating the subclass will not increase the difficulty of managing this case, which has already been certified as a class action.

The Court concludes that the proposed subclass meets the superiority requirement.

## Conclusion

For the reasons stated above, the Court grants plaintiffs' motion to certify a subclass [dkt. no. 117]. The Court certifies the following subclass: all members of the certified class who were subsequently referred by the RTU dentist to the Stroger Hospital Oral Surgery Clinic. The Court appoints Robert Burgess and Brian Henry as representatives of the subclass and appoints Thomas Morrissey and Patrick Morrissey as attorneys for the subclass.

Date: March 25, 2020

_____
MATTHEW F. KENNELLY
United States District Judge