**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEMETRIUS WHITNEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 18 C 4475** |
| | ) | |
| **FAUZIA KHAN, THOMAS DART,** | ) | |
| **and COOK COUNTY, ILLINOIS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Demetrius Whitney, who was formerly detained at the Cook County Jail, filed suit under 42 U.S.C. § 1983 on behalf of a class of inmates assigned to the Jail's Residential Treatment Unit (RTU) against Dr. Fauzia Khan, the RTU's dentist, Cook County Sheriff Thomas Dart in his official capacity, and Cook County. The claims against Dart and Cook County are made under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Whitney contends that a policy of extended delay in referring and scheduling RTU patients for treatment for serious dental conditions violated their Fourteenth Amendment due process rights by causing them unnecessary pain and suffering.

In March 2019, the Court certified a class consisting of all those assigned to be treated by the RTU dental clinic from January 1, 2017 to the present who submitted a written Health Service Request Form processed as "urgent" by the RTU dental assistant and did not receive an evaluation by a dentist for at least 14 days after submitting the

request. *Whitney v. Khan*, 330 F.R.D. 172 (N.D. Ill. 2019) ("Whitney I"). After further discovery uncovered evidence indicating that RTU patients requiring oral surgery (largely tooth extractions) experienced further delays, the plaintiffs moved to certify what might loosely be described as an oral surgery subclass. In March 2020, the Court certified a subclass consisting of members of the certified class who were referred by the RTU dentist to the Stroger Hospital Oral Surgery Clinic. *Whitney v. Khan*, No. 18 C 4475, 2020 WL 1445610, at *6 (N.D. Ill. Mar. 25, 2020) ("Whitney II").

The subclass has moved for summary judgment as to liability on its Fourteenth Amendment inadequate medical care claim against Dart and Cook County.

## Background

The following facts are undisputed except where otherwise noted. Under Illinois law, Dart is responsible for the operation of the Cook County Jail, and Cook County is responsible for Jail detainees' health and well-being. Before March 2007, the Jail had an on-site oral surgeon and six on-site dentists. During this time period, inmates with an urgent need for dental care were evaluated by an oral surgeon within seven days. The plaintiffs have produced evidence that a licensed dental hygienist, Anita Birton, scheduled these appointments.

Dr. Ronald Townsend, who was a licensed dentist at the Jail in 2006 and later, its chief of dental services, testified during a deposition that budget cuts in 2007 led to a reduction in the Jail's dental staff to one dentist and no on-site oral surgeon. The claims of the class and subclass are largely premised upon their contention that by drastically reducing the on-site dental staff and eliminating the on-site oral surgeon, the Sheriff institutionalized a practice of extended and unreasonable delay in treating RTU

detainees with serious dental problems.  The Court will focus here on the claims of the subclass, which concern delays in conducting oral surgery on RTU detainees who needed it.

Dr. Townsend testified that in 2011, he attempted to recruit an on-site oral surgeon but was unable to hire one because the salary budgeted for the position was more appropriate for a dentist than an oral surgeon, resulting in an inability to attract candidates for the position.  In September 2013, Dr. Jorelle Alexander, the current Cook County Director of Oral Health, e-mailed the Jail's chief dentist and expressed concern about an inefficient oral surgery scheduling process.  Dr. Alexander also testified during a deposition that Cook County had not attempted to recruit an oral surgeon between 2016 and at least June 2018.  Oral surgeons are trained to perform certain tooth extractions that general dentists do not perform.  With no on-site oral surgeon who could perform tooth extractions, Dart and Cook County initiated a new process: referring inmates to Stroger Hospital for tooth extractions.

Beginning in January 2017, the RTU dental clinic began seeing patients for initial evaluations.  To schedule an initial evaluation, a detainee completes a Health Service Request Form (HSRF).  Dental assistants, who are not licensed healthcare professionals, review the Jail's HSRFs with regard to dental grievances and schedule an appointment for the detainee based on the pain level the detainee has indicated on the HSRF.  Defendant Dr. Fauzia Khan, who worked as the RTU dentist and treated patients from January 2017 until September 27, 2019,[1] testified that during this period,

---

[1] Dr. Khan performed some tooth extractions when she worked in the RTU, but in April

3

patients experienced delays of up to three to four weeks to initially see the jail dentist after submitting an HSRF.

During the relevant period, the members of the subclass were housed in the RTU. Each of the subclass's members experienced significant dental pain and requested an evaluation by Dr. Khan. They each waited at least fourteen days for their evaluations. In their motion for summary judgment, the plaintiffs reference six exemplar patients whose treatment they offer as reflecting the experience of the subclass as a whole: Robert Burgess, Jacqueline Dunn, Brian Henry, Brian Herron, Magdalena Kotwica, and Nicole Morris. Dr. Khan diagnosed each of the exemplar patients with at least one "abscess," a bacterial infection of the tooth. The exemplar patients contend that an abscess is an urgent condition that requires prompt treatment—an extraction or a root canal procedure. The defendants, in contrast, characterize the patients' conditions as cavities or caries, meaning tooth decay, which are non-urgent conditions, and they describe tooth extraction as a routine, elective procedure.

Dr. Khan referred each of the subclass members to Stroger by entering an electronic referral order for a particular tooth to be extracted. All electronic referral orders for Stroger were received in a queue monitored by Juana Macias, a clerk assigned to Stroger's Referral Support Center. Macias scheduled patients based on the "next available date" offered by the computer—which could be up to twelve weeks for an "elective" procedure. The plaintiffs contend that there are oral surgery appointments at Stroger readily available on short notice but that the defendants' scheduling

_____

2019, Dr. Alexander revoked her tooth extraction privileges.

4

procedure for RTU referrals unreasonably delays treatment. Specifically, the plaintiffs contend that the general public can access Stroger's central scheduling dental hotline and obtain an appointment with an oral surgeon the following day. The defendants argue that the plaintiffs misunderstand this process; they say that a next day appointment is not guaranteed through the hotline, and even if a person secures one, it is only a consultation appointment, not an extraction appointment. Patients from the RTU, by contrast, have a single appointment at Stroger that includes a tooth extraction.

As indicated earlier, in March 2019, Court certified a plaintiff class under Federal Rule of Civil Procedure 23(b)(3), consisting of:

> All persons assigned to be treated by the [Cook County Jail] Residential Treatment Unit dental clinic from January 1, 2017 to the date of entry of judgment, who submitted a written "Health Service Request Form" processed as "urgent" by the RTU dental assistant and who did not receive an evaluation by a dentist for at least 14 days after submitting the request.

*Whitney I*, 330 F.R.D. at 180. In discovery conducted after class certification, the plaintiffs learned that a significant number of patients assigned to the RTU dental clinic were referred by the clinic to the Stroger Hospital oral surgery clinic for tooth extractions. In March 2020, pursuant to Federal Rule of Civil Procedure 23(b)(5), the Court certified the following subclass: "all members of the certified class who were subsequently referred by the RTU dentist to the Stroger Oral Surgery Clinic." *Whitney II*, 2020 WL 1445610, at *6. This subclass consists of pretrial detainees who contend that their initial requests to see a dentist due to a serious need were delayed or denied and that following a referral for oral surgery by the RTU dentist, their surgery for the same underlying dental problem was likewise unreasonably delayed, all of which caused them to suffer unnecessary pain. *Id.* at *5-6.

5

The subclass has moved for summary judgment as to liability on its Fourteenth Amendment claim against Dart and Cook County. The plaintiffs contend that significant delays in oral surgery services stemming from the RTU dental clinic's referral process—as long as three or four months for subclass members—amount to a policy or established custom of unconstitutional delay violative of their constitutional due process right to adequate medical care.

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). The Court views the evidence and draws all reasonable inferences in the nonmoving parties' favor. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). If the nonmoving parties fail to establish the existence of an element essential to their case, one on which they would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Id.* (citing *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996)). To survive summary judgment, the defendants must "present specific facts establishing a material issue for trial, and any inferences must rely on more than mere speculation or conjecture." *Giles v. Godinez*, 914 F.3d 1040, 1048 (7th Cir. 2019).

In count 2 of their amended complaint, the plaintiffs assert a claim against Sheriff Dart in his official capacity and Cook County, alleging a policy of inadequate care for serious dental conditions. The plaintiffs pleaded their claim using the "deliberate indifference" standard then applied in this Circuit to medical care claims by pretrial detainees. But shortly after the plaintiffs filed their amended complaint, the Seventh

Circuit decided, in *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018), that "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to [an] objective unreasonableness inquiry." *Id.* at 352.

Since *Miranda*, to prevail on a claim for denial of proper medical care, a pretrial detainee must show that the defendant "acted purposefully, knowingly, or perhaps [ ] recklessly when [it] considered the consequences of [its] handling of [the plaintiff's] case," and that the defendant's challenged conduct was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942-43 (7th Cir. 2019). To meet the first part of this standard, a plaintiff is not required to prove that the defendant had an intent to cause harm; what is at issue is "the defendant's state of mind with respect to the bringing about of certain physical consequences in the world." *Kingsley v. Hendrickson*, 576 U.S. 389, 395 (2015).

The plaintiffs' claims require them to meet additional requirements, however, because in count 2 they are not asserting a claim against an individual official but rather a *Monell* claim against the Sheriff and County. Section 1983 liability under *Monell* is "targeted at policies and customs that deprive inmates of their federal rights" and may exist even if no individual official is liable. *Miranda*, 900 F.3d at 344. To establish the defendants' liability under *Monell*, the class must show that there was action pursuant to a municipal policy; policymakers were deliberately indifferent to a known risk that a policy would lead to constitutional violations; and the policy was the moving force behind the plaintiffs' constitutional injuries. *See, e.g.*, *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

The class's contention is that the Sheriff's elimination of the Jail's on-site oral

surgeon and replacement of on-site oral surgery with the system of referrals to Stroger Hospital amounted to a policy that caused violations of the class members' constitutional rights—in other words, it caused objectively unreasonable treatment for the plaintiffs' serious dental conditions. More specifically, the plaintiffs contend that the referral system resulted in unwarranted delays that needlessly extended the pain they were suffering. From a *Monell* liability standpoint, the plaintiffs must establish that there were systemic deficiencies in the system established by the Sheriff and County, not simply a few or random missteps. *See, e.g., Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020).

In opposing summary judgment, the defendants argue that the class has not established that its members suffered from objectively serious conditions or that the referral system deprived them of timely access to dental care. The Court concludes that genuine factual disputes involving both of these points require denial of the class's motion for summary judgment.

### 1. Fourteenth Amendment—seriousness of the plaintiffs' conditions

The defendants contend that the plaintiffs' claims require them to establish as a threshold requirement that they suffered from objectively serious medical conditions. *See* Defs.' Resp. at 4. It is not at all clear to the Court that this is a separate and independent requirement of the plaintiffs' Fourteenth Amendment claims. No such requirement is found in *Miranda*, which establishes a two-element standard for pretrial detainees' medical care claims: the defendant's knowledge of the physical consequences of his conduct, and the objective unreasonableness of the defendant's treatment of the plaintiff's medical condition. *Miranda*, 900 F.3d at 353-54. The notion

8

of a need to make a separate showing of an objectively serious medical condition is referenced in *Williams*, 937 F.3d at 942, but it is *dictum*, because the issue was not disputed in that case. And the court in *Williams* cited as support *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018), which makes no reference to this point at all, let alone as a separate requirement for a pretrial detainee's Fourteenth Amendment claim. Rather, *McCann*, like *Miranda*, identifies only two requirements: whether the defendant acted knowingly and whether her treatment of the plaintiff was objectively reasonable. *Id.* The case says nothing about the seriousness of the defendant's condition. The same is true of *Turner v. Paul*, 953 F.3d 1011 (7th Cir. 2020), a more recent case involving medical care at the Cook County Jail; it likewise sets out a two-part test for assessing a pretrial detainee's medical care claim. *Id.* at 1015.

Both *Miranda* and the Supreme Court decision from which it stems, *Kingsley*, make it clear that a pretrial detainee's Fourteenth Amendment claim follows a two-part test: knowing conduct and objective unreasonableness. The Court is inclined to believe that the seriousness of the plaintiff's condition, rather than being a separate element of a plaintiff's Fourteenth Amendment claim, is better viewed as a component of the analysis of the objective reasonableness of the defendant's treatment of the plaintiff. In other words, the seriousness of the plaintiff's condition is considered in a way similar to the need for the use of force in an excessive force case—as one of the factors considered in determining the objective reasonableness of the defendant's conduct. That is how *Kingsley*, the Supreme Court decision from which *Miranda* stems, discussed objective reasonableness in the context of a pretrial detainee's Fourteenth Amendment excessive force claim: as requiring the assessment of all of the

9

surrounding circumstances.  *Kingsley*, 576 U.S. at 397.

Even considered this way, however, genuine factual disputes regarding the nature of the class members' dental conditions preclude entry of summary judgment in favor of the class.  All of the members of the subclass were seen by the RTU dentist and were referred to Stroger for tooth extractions.  Pl.'s Stat. of Facts ¶ 17; Pl.'s Ex. 6, Khan Dep. at 99:18-101:15; Pl.'s Ex. 7, Defs.' Resp. to Pl.'s Stat. of Facts in *Townsend v. Dart* ¶ 1(a).  But that does not necessarily mean that all of them required immediate or even prompt treatment.  This is likely true of those who were diagnosed by the RTU dentist as having a periapical abscess, that is, a collection of pus around the root of a tooth, generally caused by a bacterial infection.  Pl.'s Stat. of Facts ¶ 42; Pl.'s Ex. 9, Alexander Dep. at 11:21-12:1.  The Seventh Circuit concluded, rather definitively, in *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938 (7th Cir. 2015), that "[a]ny tooth abscess is serious; any dentist knows that" and that "[a]ny minimally competent dentist knows" that if a report of an abscess is correct, "the patient needs prompt medical treatment."  *Id.* at 940.  For such patients, undue delays caused by the Stroger referral process likely amounted to objectively unreasonable care.[2]  But not all (and likely not even most) of the subclass members were diagnosed with abscesses.  Plaintiffs concede this:  they say in their brief that it was a "subset of the class" that was diagnosed by the RTU

---

[2] The Court acknowledges that the defendants have cited testimony from Dr. James Murphy, an attending surgeon at Stroger, that periapical and other abscesses are not "serious" conditions.  But it is clear from Dr. Murphy's testimony that this is based on his re-definition of the term "serious" to mean "urgent or emergent."  Defs.' Ex. A, Murphy Dep. at 171:6-18, 218:7-219:20.  The defendants cite no authority for the proposition that a jailer's medical care obligations under the Fourteenth Amendment are limited to emergencies or matters that a surgeon might consider "urgent."  And even here, another witness offered by defendants, oral surgeon Dr. Biraj Shah, testified that a periapical abscess "can be" an urgent matter.  Defs.' Ex. B, Shah Dep. at 256:6-8.

dentist has having abscesses.  Pl.'s Summ. J. Mem. at 4.

As to the remainder of the class members, or at least most of the remainder, the evidence seems to reflect that they simply had cavities or decayed teeth.  And the defendants have offered evidence that treatment of such conditions is a routine, elective procedure that can wait, even for a relatively extended period.  Defs.' Ex. B, Shah Dep. at 255:18-24; Defs.' Ex. A, Murphy Dep. at 130:24-132:24.  For such patients, there is a significant question, non-resolvable on summary judgment:  whether delays in treatment rendered their care objectively unreasonable.  Because this likely constitutes most of the subclass, or at least a goodly portion of it, the subclass is not entitled to summary judgment.

### 2.    *Monell*—causation; deliberate indifference of policymakers

"Deliberate indifference" to a detainee's medical needs is not, after *Miranda*, required to sustain a Fourteenth Amendment claim.  But the concept of deliberate indifference does come into play in assessing liability of a governmental entity under *Monell*.  Specifically, as the Court has indicated, in a situation like this one where the claimed policy is not unconstitutional on its face, a plaintiff must show that policymakers were deliberately indifferent to a known risk that the policy they established led or would lead to constitutional injury.  *See Pulera*, 966 F.3d at 550.  In addition, a plaintiff must show that the defendant's policy was the moving force behind the constitutional injury. *Id.*

In their briefs, the parties discuss the application of *Turner v. Paul*, 953 F.3d 1011 (7th Cir. 2020), which like this case involved delays in medical treatment allegedly due to the manner in which certain types of surgery for detainees at the Cook County

Jail were scheduled at Stroger Hospital. In that case, the court concluded that the plaintiff had not shown that "a different policy would have led to faster treatment" or that "the delay in his own treatment was an obvious consequence of the County's actions." *Id.* at 1017. The plaintiffs contend that the present case is different because "the structure established by Cook County"—after its elimination of the on-site oral surgery clinic—"causes inmates in need of extractions to wait months." Pl.'s Summ. J. Mem. at 8-9. Accordingly, the plaintiffs contend, the County's own actions render it directly responsible for the resulting delay in treatment. *Id.* at 7-9. The plaintiffs also assert that they have shown that an alternative policy—allowing inmates to obtain next-day appointments through Stroger's weekday oral surgery clinic hotline—would result in more expeditious treatment. *Id.* at 8-9.

The defendants dispute the plaintiffs' contentions. First, the defendants argue that a referral order by the RTU dentist is not the only way to obtain a Stroger appointment; they contend that appointments can be expedited in the case of a dental emergency or an urgent condition. Defs.' Resp. at 7-8. The defendants also contend that this case is analogous to *Turner* because the plaintiffs have not presented evidence that the presence of an on-site oral surgeon would have expedited their treatment. *Id.* at 10-11. The latter argument is belied by the record, which reflects that Jail detainees were evaluated by oral surgeons within one week under the pre-March 2007 policy. The members of the subclass, who were detained after Cook County's 2007 budget cuts, were unable to see even the RTU dentist within two weeks, let alone an oral surgeon, which took far longer. That certainly indicates that the elimination of an on-site oral surgeon and the substitution of the policy of referral to the Stroger clinic significantly

12

increased delays in treatment.

What is less clear is whether these delays caused objectively unreasonable treatment for the class or a significant portion of it, or whether the defendants were deliberately indifferent to a risk that objectively unreasonable treatment would result—as required for *Monell* liability. In moving for summary judgment, plaintiffs described the cases of a number of exemplar class members. The defendants countered with evidence that would permit a finding that these class members, or at least most of them, received objectively reasonable care. And plaintiffs essentially offered no evidence on the question of policymakers' deliberate indifference to the fact (assuming it is a fact) that the policy change would cause violations of detainees' constitutional rights. There is certainly support for a finding that policymakers were aware that eliminating on-site oral surgery and replacing it with referrals to Stronger Hospital would slow down treatment, but that is not the same as establishing awareness of or deliberate indifference to a risk of systemic constitutional deprivations. The plaintiffs may be able to prove this at trial, but they are not entitled to summary judgment.

### Conclusion

For the reasons stated above, the Court denies the plaintiffs' motion for partial summary judgment in favor of the oral surgery plaintiff class on their *Monell* claim against Dart and Cook County [dkt. no. 180].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 12, 2021